is Moczek, Patrice Moczek, Justice Secretary of HHS 2018-2341. Mr. Blumenspiel, when you're ready. Thank you, Your Honors. I thank you very much for this opportunity to discuss what I consider a grave injustice to a young 12-year-old girl. I represent the petitioner appellant in this case. I've had the privilege, pleasure of working with, I assume you are, Rob Coleman. I look forward to meeting you. She was a 12-year-old four-point student in a gifted program, very social, hiking, dancing, having a good time. School mandated that she take tetanus, diphtheria, pertussis vaccine, and meningococcal, and they sent her to a specific clinic where the doctor then also said, I want you also to take a fifth vaccine, pardon the self. Counsel, we're very sympathetic to anyone who was injured, either from a vaccine or not, but we have a particular proceeding here, and we have the requirements of the law, and the special master dismissed your case for failure to prosecute, and I count three times when you were required to do something and didn't act, and so why was that an abuse of discretion? That is, you were focusing much like the special master did. The evidence of the damage is incredible, and we'll leave that for a secondary one. The fear to prosecute. Well, there is, I mean, the special master did lay out his conclusion that he didn't think it was a strong case in any event because of the prior history of illnesses and problems, but he set that aside at the end, right, and said, even if I don't find that, even if I assume that this is a strong case, I find that all of the other questions don't justify allowing the additional extension. Yes, he did seem to overfocus on the procedural, what he calls the fear to prosecute, and I can understand his animosity towards me on that, and that's why I appreciate the opportunity to talk with you directly so you can judge my honesty and sincerity. He said I was somewhat disingenuous. I have practiced for 52 years in every state east of the Mississippi and three west. I've never had a judge or an attorney that I worked in opposition with that had ever told you folks that Jim ever violated and intentionally and knowingly ignored an order. Okay, but let me tell you what your problem is here. There is evidence of at least negligence in terms of responding to the court's orders. The question, however, is whether in setting aside the merits of the case pursuant to the Court of Federal Claims precedent, he made a mistake because the Court of Federal Claims precedent, as I understand it, that he relied on says that the merits of the case are not relevant to the question of whether this is excusable neglect or not, and I'm not sure that's correct. It isn't. It isn't. He has to preponderance the evidence. We met it by four experts to zero. We met it, so set that aside, and the primary issue, and I agree with you, is me. Was there justification? I showed you, and I couldn't understand it when in his opinion he attached documents that allegedly showed the email worked, and when I, on my reply brief, took a magnifying glass, couldn't figure out why the print was so small. The key ruling was the show cause, or I'm going to dismiss this case, and that one was not sent to the right email address. By their own document, they show that, and that's what was frustrating. He made a comment in his opinion to support his opinion of failure to prosecute when he said for 11 months in this case, the email process worked perfectly. You got every one of some 34 entries. I likewise shared with him a mistaken view. I relied on that 11 months of 34 entries as justification, which brings in the word invertence. I was invertent in what happened there, but I relied on the fact that, yes, they come through all the time, so I looked. I have never in 52 years ever had a circumstance like this. It's the most extraordinary, exceptional circumstance where a doctor had a personal crisis, a family health member dying, a malpractice. I think, you know, and I concede this special master tends to use harsh language that isn't necessary sometimes to the circumstances, but having said that, wasn't it not just a situation where you had some reasonable problems, but you didn't let the special master know about those? That's a very, I'm an old-fashioned person. I trust people. Until they prove to me, I can't trust them. I trust people. That's what guys my age do or did, and that's the way I felt about Judge Special Master in this case, is that he was kind enough, and when I asked to have until the end of July, he gave it until the end of August, three weeks, whatever it was. He then gave me another three, four weeks. I thought he was a kind, patient sort. Then when I checked email every day, nothing in September or October came through. Well, it seems to me difficult to say that because the special master had been kind and patient that that somehow excused your neglect, which is pretty clear from the record. You didn't do what you should have done. The question, at least in my mind, is whether in resolving this question of excusable neglect, the special master erred in putting aside the merits of the case, which it seems to me may not be correct. If I understand you right, no. You should not overlook the merits of the case when dealing with failure to prosecute, and the pioneer, the U.S. Supreme Court, and Pioneer and Clapper both said it is to be liberal. Well, your court said when judging whether or not to set aside a judgment is to be liberally construed with the exception of the finality of judgment for the purpose of doing substantial justice. The substantial justice is not sanctioning me. It is whether or not this 12-year-old girl who has had to drop out of school lives in constant pain in the arms and legs, her heart doesn't function properly, her legs swell, she is in constant fatigue, everything in her life has stopped, and she has no way to support herself in the future. But how do you address the special master's specific references to documentation that show that there were substantial problems before the administration of these vaccines? Because she's just absolutely dead wrong. She had a burst ovary and the cyst rehealed. She had some minor problems, but you don't have a whole lot of serious problems when you're a four-point student in a gifted program and you are socially active. You go hiking and having fun with friends and now she has no friends, no social activity. She sleeps during the whole day. She can't sleep at night. Her world has been destroyed and that cannot be lost in this court's judgment. It's got to be looked at because, and I would not, you know, there's a public opinion. If he wants to just sanction me in the future by having that public opinion, that's fine. But that's why I have waived, when that argument was made, that's why I have waived all fee and all expenses so that you folks know from this heart, and I swear to my God, my whole focus and intent is that justice is done for this young girl whose life has been ruined and not some sanctioning for their own document that said they sent it to the wrong email for show-cause order. These things cannot exist, override, and destroy this girl's life who had nothing to do with this. The school mandated the four and it is interesting to note when weighing the value of her injuries is that you have to look, and the Vaccine Act itself says, and I've got it written down here, the TB, the tetanus, diphtheria, pertussis, meningococcal, and gardasil, they're all listed as recognizing their adverse events secondary to those drugs. And anaphylaxis, neuritis, basal vagal syncope, encephalopathy, encephalitis, she literally has symptoms of every one of those. And the vaccine people have recognized that and said that is an acknowledged adverse reaction. That cannot be set aside for a two-month delayed report, which was not the fault of anybody and none of us had any control over it. The court had no control over it, Dr. Miller had no control over the crisis he had in his practice, and the family member that was in critical condition, and Dr. Mazur who was in a two-month trial, those doctors, they had no control over it. I had no control over it. It just simply, I couldn't understand. I didn't know whether to approach the judge and say, judge, I don't know whether they're dead or whether they had a stroke or a heart attack, they're hospitalized, I can't get through to them. And I kept thinking, this is where inadvertence comes in, which does allow reversals. I was inadvertent. I was so, every time, I'm going to get them the next time. I just know I'm going to get them on the phone the next time. And I didn't. And I'd wait another two, three days. And I could never even leave a voicemail for Dr. Miller. And I left multiple voicemails for Dr. Mazur, who was supposed to be the corresponding in go-between, and he admitted I never even answered my phone or listened to my voicemails for the two months I was tied up in that litigation. Everything just all coupled together there for those two months. And the court's email system, for whatever reason, didn't work until, oddly enough, the public decision on November 14th was posted. That's the first in two months that I And that's what I have to convince you folks. I'm swearing to God that I was inadvertent, and I think I would fit the terms of the Rule 60b-1. There were some mistakes, but the judge made them too. Counsel? Yes. The question isn't the fervency or the dedication of your advocacy for your client. The question is whether there was an abuse of discretion, a narrow question, on the part of the special master, which the Court of Federal Claims affirmed. I know, but I think they also were wrong. And the, in other words, the abuse of discretion was arbitrary. He focused more on me than on my client, and it was a mistake. He also mistakenly failed to even look at the full record and see Dr. Flynn's where his record, her record, repeatedly said she's been injured by Gardasil, and then two letters to the school saying she can't come back to school at least for the rest of the year because of a Gardasil injury. He never seemed to recognize that treating physician, and he said only one treating physician. No, two treating physicians. Counsel, you wanted to save some time for rebuttal. Shortly. Why don't we save your time and hear from Mr. Coleman. Thank you. Robert Coleman May it please the Court. My name is Robert Coleman. I represent the Respondent, Secretary of Health and Human Services. Let me tell you what my problem is here. It's clear that counsel was negligent, no question about it. The question is what role does the merits of the case play in this? And in reading this record, it looks as though the case is pretty substantial, and to the extent that the Special Master suggested that it was insubstantial, I think that's hard to sustain. The question is what role does the merits of the case play in making the excusable neglect determination? As I understand the Court of Federal Claims in this case, and in the earlier case on which it relies, it says that's not relevant to making the decision, and I'd like you to address that because that seems to me not to be correct. My understanding from the law is that, as affirmed by this very Court and Fisher v. Anderson, that excusable neglect for failing to respond to orders, there is no claim there. Failing to respond to orders does not constitute excusable neglect, and in Fisher v. Anderson, this Court did not address it. Did Fisher consider the question of whether the merits of the case should be taken into account in making that determination? No. In this Court's opinion, the merits are not. But the Court of Federal Claims has said, no, it's irrelevant, in an earlier case which they relied on here. I'm not sure that's correct. I mean, no question that there's negligence here, but in making the determination of excusable neglect, doesn't the Special Master have to consider the strength of the merits of the case? I don't believe that the case law indicates that he does. However, even if he does, he did address the merits of the case. Is there any case that's, apart from the Court of Federal Claims cases, is there any case that says you don't consider the merits? There's no case that I'm aware of that affirmatively says you do not consider the merits when addressing excusable neglect. However, here, the Special Master has argued that there is some prejudice to HHS. Here, HHS did not argue prejudice in the first instance. There is, of course, some prejudice inherent in this type of case because HHS would have to spend additional resources to deal with the claim. But because of the strength of the other arguments, particularly the third prong identified by Pioneer, which is the most important prong, which is whether the reason for the delay was the reasonable control of the moving party. And here, that factor weighs heavily against Petitioner. Well, there's no sign of bad faith or anything, right? Which is another, that's correct. Respondent has not argued that. There's no prejudice and as Judge Dyke says, there's real issues with respect to the merits. The Sulevance case, which comes from the Second Circuit, indicates that the preponderant factor is that third factor, whether the moving party had reasonable control over the reason for the delay. And here, the reason for the delay was not any issues with the experts in the underlying case. The real issue is that Petitioner's attorney did not act. Well, I'm not sure that real issue is correct. That is an issue. And certainly, apart from this fact that the September 19th thing was sent to the wrong address, which is not something the Special Master recognized, but even apart from that, there's evidence of neglect. There's no question about it. The question is whether there's an abuse of discretion here in failing to consider the merits of the case and weighing that together with the lack of prejudice to make a determination. Although the Court may disagree with the weighing of the merits, the Special Master here did unquestionably weigh the merits. Well, yeah, but he explicitly refused to consider the merits of the case in making the determination. He weighed the merits and found that there was no merits of the case, in fact. Well, I think that, to me, that's not supported by substantial evidence. I'll tell you, looking at this record, I just think that's not supportable. This is a substantial case. Whether they ultimately win or not, who knows? But it's not an insubstantial case. Well, the Special Master did go through the underlying evidence, as well as the expert reports that were filed by Petitioner. Here, Petitioner filed three expert reports, but all three expert reports had different diagnoses for the condition, and they offer no convincing explanation. The Special Master... Well, that's the question. Convincing. That's for a trial. Here, under Vaccine Rule 8D in this program, the Special Master does not have to afford Petitioner an evidentiary hearing. He can make a determination based on the written submission. Okay, but do you agree that the failure to consider the merits in making the excusable neglect determination is error? No. And why is that? What authority do you have for that, aside from what the Court of Federal Claims has said about this? This Court in Fisher v. Anderson has upheld... But you said that Fisher didn't consider the merits question. Exactly. So the merits... I don't know if it was argued by... Well, there's no indication in the face of the opinion it was argued, right? Right. I'm not aware of that. However, here, the merits were addressed. So although this Court may disagree with the value placed on the merits, those merits were addressed. The Special Master did go through all of the evidence submitted, and moreover, the Special Master did address even the late-filed expert report. The Special Master devoted several paragraphs to the issue. The expert support remains weak. Causation theory is facially unpersuasive. Granting relief would likely be a futile exercise. That's correct. That's your point? Yes. And the Special Master on page 18 of the appendix, note 14, indicates that not only is the case meritless, but if it were to be reopened, it may not even have a reasonable basis to move forward. The question is whether he should not have considered the merits. Either way, here, I believe the Special Master is covered, because the Special Master did address the merits on one side, and on the other side, he also did address Petitioner's claims for relief from judgment and found that on those grounds, primarily because Petitioner here unquestionably knew of the initial deadline. As he played an active role, he, meaning Petitioner's counsel, played an active role in setting that deadline. So Petitioner knew of that deadline at minimum and failed to comply with that. Is there a difference between seeking relief because of mistake or inadvertence versus excusable neglect? They're delineated as separate factors. However, here, Petitioner hasn't put forward any case law directly addressing mistake and inadvertence, so... Well, you wouldn't necessarily need to even get to excusable neglect if there were a conclusion that really what happened here was just inadvertence as opposed to full-on neglect. Perhaps, but here, Petitioner knew of the first deadline, so willingly failed to act in light of that. But there is some confusion in the record as to whether he ever got the show cause order. No, that's not correct, and I can address that issue as the primary reason for the discrepancy regarding, that's Appendix Page 27 that Petitioner identifies. The primary reason for the discrepancy there is a poor quality photocopy. The original document is Court Exhibit 4 that the Special Master filed along with his decision denying Petitioner's request for relief from judgment. That document is clear. I brought copies here today. I could submit those to the court or I could just identify where the court can find the clean document, but that was submitted on February 16th, 2018. It shows that Petitioner received the proper order, received that order, the proper email address. Yes, it was sent to the correct address. That's something that's also addressed in Fisher v. Anderson, that once the correct address, once the information is sent to the correct address, it is presumed that Petitioner has then received that. If there are no further questions, Respondent respectfully requests that this Court affirm. Thank you. Thank you, Mr. Coleman. Mr. Blumensteel has about two and a half minutes. Just a couple of particular points here. It was only a two-month delay, this report. This whole thing is over a two-month delay for a doctor's report who was having a family crisis and a practice crisis, and we couldn't find out about it. But here's what the U.S. Supreme Court and Pioneer said. Congress intended courts to be able to be permitted to accept late filings caused by inadvertence, yes me, mistake, both the judge and I, carelessness, yes, not just by those caused by intervening circumstances beyond the party's control. Willingly failed to react, that is not the case. I struggled every two or three days, but my focus was I trusted the judge, I trusted the email. I don't think you're going to get anywhere with that. Well, yeah, maybe not, but it's still in my heart, Your Honor. That's the problem. The other thing that I want to say, Rule 60B-6, which is the alternative to the Rule B-1, is must be justified by a showing exceptional circumstances. I doubt if anybody in this courtroom had any more exceptional circumstances than that doctor having his crises, the failing of the email address, things of that nature, but it must be justified by exceptional circumstances where a grave miscarriage of justice, now we're weighing where the grave miscarriage of justice would result in the substantial rights of a party would be harmed if relief is not granted. That's the Kinzora and the Kennedy case. Her rights to relief were completely destroyed. But here the special master said granting relief would be a futile exercise because the case is weak on the merits. Did you not perceive the way I perceived that? Futile exercise when I knew we had the preponderance because there's no respondent expert countering it, okay? But he also talked about it could be a futile exercise and bring it back and I'm going to deny it, but I might also find it was unreasonable and no good cause to even file this claim. What he was saying to me was Bloom and Steele don't appeal this or I may deny your fee and your expenses. Well, to show how genuine and sincere I am, that's why I waived all my fee and all my expenses. This is my last legal event of my 52 year career. If you are kind enough to reverse this case and send it back, I will step out of the case. Counsel, kindliness isn't the issue. We appreciate your argument and your time is up. Thank you for your time. I appreciate very much the opportunity.